# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| INSTITUTIONAL PROCESSING SERVICES LLC d/b/a IPS REBATES, | ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | C.A. No. N25C-04-088 KMM (CCLD) |
| v. | ) ) | |
| REALTIME SOLUTIONS, LLC d/b/a COOL SCHOOL CAFE, | ) ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) | |

Date Submitted: November 12, 2025
Date Decided: January 6, 2026

## <u>MEMORANDUM OPINION AND ORDER</u>

Institutional Processing Services LLC's Motion for Judgment on the Pleadings under Rule 12(c) – DENIED

Institutional Processing Services LLC's Motion to Dismiss Realtime Solutions Counterclaims under Rule 12(b)(6) – DENIED

Richard L. Renck, DUANE MORRIS LLP, Wilmington, Delaware; Lawrence H. Pockers (argued), Seth H. Dawicki, DUANE MORRIS LLP, Philadelphia, Pennsylvania, *Attorneys for Institutional Processing Services LLC.*

Lakshmi A. Muthu, Farbod Firouzkouhi, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; Joseph P. Crimmins (argued), Adam L. Littman, Benjamin Greene, ARENTFOX SCHIFF LLP, Boston, Massachusetts, *Attorneys for Realtime Solutions, LLC.*

**Miller, J.**

# I. INTRODUCTION

Plaintiff Institutional Processing Services LLC ("Institutional Processing") is a rebate processor for school districts. School districts become members by entering into a contract with Institutional Processing that contains a 90-day termination provision. Defendant Real Time Solutions, LLC, known as "Cool School Cafe" ("Cool School") maintains a loyalty program for its school district members. The parties dispute whether they are competitors. Institutional Processing contends that they are not and that these two entities coexisted in the school district marketplace for a number of years, having a large overlap in membership. At least as of March 2025, Cool School contends that it also provided rebate services.

In March 2025, Cool School changed its website to now require its members to terminate their contract with any competing rebate processor, including Institutional Processing.

Institutional Processing brings this action asserting that Cool School tortiously interfered with its contracts and prospective business relations by requiring members to immediately terminate their contract with Institutional Processing, in violation of the notice provision. It further contends that unless the member did not terminate the Institutional Processing contract, the member was unable to access its previously earned Cool School loyalty points.

After being alerted to Cool School's new requirement, Institutional Processing emailed its members, taking issue with Cool School's action. Cool School responded by sending an email to its members, challenging the statements made by Institutional Processing. Each side filed a claim asserting that the other's email is defamatory and constitutes trade libel.

Finally, both sides assert a violation of the Delaware Deceptive Trade Practices Act ("DTPA").

Institutional Processing filed two motions: a Motion for Judgment on the Pleadings on all its claims, except the DTPA count, and a Motion to Dismiss Cool School's counterclaim for failure to state a claim.

In its answer to the complaint Cool School denied many of the key allegations underlying Institutional Processing's claims. The Court must construe the allegations in the pleadings in a light most favorable to Cool School. Because the pleadings raise disputes of material fact, Institutional Processing failed to establish that it is entitled to judgment as a matter of law. Therefore, the Motion for Judgment on the Pleadings is DENIED.

The Court must also construe the allegations in the counterclaim in a light most favorable to Cool School. Under Delaware's notice pleading standard, Cool School's counterclaim sufficiently puts Institutional Processing on notice of the claims asserted against it. Therefore, the Motion to Dismiss is DENIED.

3

## II. JUDGMENT ON THE PLEADINGS

### A. *Factual Background*[1]

Institutional Processing is a nationwide rebate processor for school districts in the K-12 market.[2] Enrolling members authorize distributors and manufacturers to share the school district's purchasing data with Institutional Processing, who matches the purchases with available rebates and then issues a quarterly rebate check to the member.[3] A school district becomes a member by completing Institutional Processing's Rebates Letter of Participation Form. The contract contains a 90-day notice of termination provision.[4] Of the approximately 15,000 school districts in the United States, 1,800 are Institutional Processing members.[5]

Cool School is a nationwide K-12 foodservice loyalty program provider with approximately 10,000 school district members.[6] Institutional Processing alleges that Cool School is not a competitor. Rather, school districts often are members of both programs and Institutional Processing estimates that between 1,200 and 1,700 school districts are members of both.[7]

---

[1] For purposes of the 12(c) motion, the facts are derived from the complaint and answer. D.I. 1, 4.
[2] D.I. 1 at ¶ 7.
[3] *Id.* at ¶ 9.
[4] *Id.* at ¶ 11.
[5] *Id.* at ¶ 8.
[6] *Id.* at ¶ 14.
[7] *Id.* at ¶ 17.

Cool School provides its members with "Cool School Points" for their qualifying purchases, which members use to enhance quality meal programs for students. Members often save their points for larger purchases that would otherwise be unaffordable.[8] Members access their points *via* Cool School's online membership portal.[9]

Prior to March 2025, Cool School members were not required to terminate their membership in other programs to gain access to their Cool School Points. Institutional Processing alleges that in March, Cool School changed its website to require members signing into the portal to accept new terms and conditions. Members were now required to identify any other rebate processing program to which the member belonged and terminate its participation in such "conflicting direct program" within five business days. "Institutional Processing" appeared in a dropdown box of "other rebate processors."[10] If the member failed effectuate the termination, the terms of the webpage authorized Cool School to do so on the member's behalf.[11] The updated members' portal appeared as:

---

[8] *Id.* at ¶ 19.
[9] *Id.* at ¶ 18.
[10] *Id.* at ¶ 23.
[11] *Id.* at ¶ 24.

**Points Automation and Enhancements**

Answer the following questions to continue:

Is your district Contract Managed or Independently Operated?
Ex: "Aramark managed"
REDACTED

Is your district a member of a Group Purchasing Organization (GPO) or Regional Co-op?
Ex: "Premier or HPS"
REDACTED

Please Specify Regional Co-op*
REDACTED

Are you a member of a Rebate Processor?
Ex: "IPS Rebates/Aramark"
IPS Rebates (Aramark)

**Termination Acknowledgement, Authorization and Release**

☐ I acknowledge and authorize the Prime Services letter of termination (LOT) and release below

Effective 3/18/2025, Member, REDACTED will no longer participate in any programs offered by **IPS REBATES (ARAMARK)**. Buyers Edge Platform is hereby authorized to communicate this termination with the GPO on Member's behalf. However, Member hereby acknowledges that it is the Member's responsibility to provide a copy of the letter of termination ("LOT") to the former GPO of record. A copy of the LOT of termination will be supplied to Member via email for the purposes of communicating the same to Member's former GPO.

**Need More Help?**

Get in Touch with Your Rep

Figure 1.[12]

On March 18, 2025, Institutional Processing received reports from its members that Cool School was blocking access to their Cool School Points unless they immediately terminated their contract with Institutional Processing.

---

[12] *Id.* at ¶ 26.

Specifically, members were allegedly unable to navigate to their points page without first terminating their Institutional Processing contract.[13]

In response, Institutional Processing sent an email to its members on March 19, 2025 (the "IPS Email"), stating:

> IPS Rebates has been made aware that members belonging to Cool School Cafe are being prompted to terminate participation in IPS Rebates when logging into Cool School Cafe to access points. We are deeply concerned about the validity of this request.
>
> For many years, districts have been able to earn Cool School points from exclusive manufacturer partners and earn rebate dollars from hundreds of IPS Rebates manufacturer partners. These companies benefitted your Child Nutrition program in separate and unique ways.
>
> ***We do not believe that you should be required to terminate your relationship with IPS Rebates to access your CSC points. These are points that we understand you have already earned***. We value our relationship with you and ask that you not take any steps to terminate your participation with IPS Rebates.[14]

Institutional Processing also sent a cease-and-desist letter demanding that Cool School immediately refrain from continuing to interfere with Institutional Processing's contractual and business relations with its members.[15]

On March 21, 2025, Cool School sent its members an email (the "CSC Email") stating:

> We're reaching out to address a recent communication you may have received from IPS Rebates. On March 20th, IPS Rebates Vice President, Shellie Batten, ***issued a message implying that Cool School***

---

[13] *Id.* at ¶¶ 25-26.
[14] *Id.* at ¶ 30; *see* D.I. 4, Ex. A (emphasis added).
[15] D.I. 1 at ¶ 31.

*Cafe members are being prompted to terminate their participation with IPS Rebates in order to access their Cool School Points*.

We want to assure you, this claim is entirely false. Cool School Cafe has not taken any action to restrict access to the loyalty points earned through your qualifying purchases.

IPS Rebates is not affiliated with Cool School Cafe and is not authorized to speak on our behalf. All Cool School Points in your account are received as a result of your district's qualifying purchases from our manufacturer partners, and *your access to those points remains fully intact*. For more than 30 years, Cool School Cafe has offered unwavering support to child nutrition programs and school nutrition professionals by standing on principles of transparency and collaboration. We will continue to uphold our commitment to the industry and our values.

If you receive communications from any third party misrepresenting our program or making inaccurate claims about your Cool School Cafe membership, we ask that you please notify us immediately so we can take appropriate legal action. . . .

We apologize for any confusion this inaccurate and unauthorized communication regarding Cool School Cafe may have caused….[16]

On March 24, 2025, Cool School again modified its member login screen.

Now members were required to accept updated Cool School terms and conditions *via* a pop-up box.[17]

---

[16] *Id.* at ¶ 36; *see id.*, Ex. E (emphasis added).
[17] *Id.* at ¶ 43.

Figure 2.[18]

The new terms and conditions were for Cool School's Prime program, which included "enhanced" points and a rebates program.[19]  According to Institutional Processing, Cool School's website stated that it allowed its members to enroll in the points program without having to join the rebates program, but in actuality, members were forced to join both programs.  This time, Institutional Processing was not identified on the portal page, but in the "fine print" of the terms and conditions page, members were still required to immediately cancel their participation in "conflicting direct program[s]," such as Institutional Processing's.

---

[18] *Id.* at ¶ 43.
[19] *Id.*, Ex. C.

As of June 2025, due to Cool School's actions, at least six Institutional Processing members terminated their contracts and it anticipates that additional members will do the same.[20]

## B.   *Procedural Background*

Institutional Processing filed this action asserting five causes of action: (1) tortious interference with contract, (2) tortious interference with business relations, (3) defamation, (4) trade libel, and (5) violation of the DTPA.[21]

Cool School answered the complaint, denying many of Institutional Processing's central allegations, including that (1) they are not competitors, (2) Cool School maintains two sets of terms and conditions, and (3) it blocked its members' access to their points unless they immediately terminated their contract with Institutional Processing.

Institutional Processing moved for judgment on the pleadings on counts 1 through 4.

## C.   *Standard of Review*

On a motion for judgment on the pleadings under Superior Court Civil Rule 12(c), the Court views the facts pleaded, and the inferences drawn from such facts,

---

[20] *Id.* at ¶¶ 48-49.
[21] *See generally id.* at ¶¶ 50-103.

in a light most favorable to the non-moving party.[22] The court considers all pleadings, including the complaints, answers, "documents integral to the pleadings," such as those attached as exhibits or incorporated by reference, and facts subject to judicial notice.[23] The court will not, however, "rely upon conclusory allegations . . . [and] neither inferences nor conclusions of fact unsupported by allegations of specific facts . . . are accepted as true."[24] "[T]he Court may grant a motion for judgment on the pleadings only when no material issue of fact exists and the movant is entitled to judgment as a matter of law."[25]

## D.    *Analysis*

### 1.    *Tortious Interference with Contract*

A claim for tortious interference with contract requires a plaintiff to establish: (1) the existence of a contract, (2) defendant's knowledge of the contract, (3) an intentional act that is a significant factor in causing the breach of the contract, (4) the absence of justification, and (5) resulting injury.[26]

---

[22] Del. Super. Ct. Civ. R. 12(c); *Davis v. Tristar Claims Mgmt. Servs., Inc.,* 2024 WL 885440, at *2 (Del. Super. Feb. 29, 2024).
[23] *Festival Fun Parks, LLC v. MS Leisure Co.*, 2023 WL 8714994, at *4 (Del. Super. Dec. 18, 2023) (citing *Jiménez v. Palacios*, 250 A. 3d 814, 827 (Del. Ch. 2019)); *see also Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *8 (Del. Super. Aug. 16, 2021) ("[T]he Court can consider, limitedly, documents outside the pleadings but integral to and incorporated referentially into them.").
[24] *Festival Fun Parks, LLC*, 2023 WL 8714994, at *4.
[25] *Davis*, 2024 WL 885440, at *2.
[26] *WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012).

Institutional Processing argues that there are no disputes of fact raised in the pleadings and therefore, it is entitled to judgment on this count. Specifically, the pleadings confirm that:

(1) Its Enrollment Form constitutes a valid and enforceable contract that contains a 90-day notice termination provision.

(2) Cool School knew of the contracts. Institutional Processing appeared on Cool School's webpage in the dropdown box. Further, the cease-and-desist letter informed Cool School that "certain of its contracts with members" contained a 90-day notice provision.

(3) Cool School acted intentionally in causing the breach. Cool School required members to accept new terms and conditions that included terminating Institutional Processing's contract and members could not access their points unless the termination was immediate. And after Cool School updated its webpage for a second time, it hid the termination requirement in the fine print of Cool School's terms and conditions.[27]

(4) Cool School lacked justification. Institutional Processing satisfied this element because Cool School caused the breach by requiring termination of the Institutional Processing contract before Cool School members could access their earned points or hiding it in the fine print in the hope that members would not read

[27] *See* D.I. 1, Ex. C, § 8.

the terms and conditions. Further, there was no reason to cause the termination, as school districts had been members of both programs for years.

(5) Institutional Processing sustained an injury. At least six members terminated their contracts with Institutional Processing due to Cool School's conduct and therefore, it has shown that it suffered an injury.[28]

Cool School responds that: (1) its denial that its conduct interfered with any Institutional Processing contracts, alone, is sufficient to deny the motion; (2) the Court cannot accept Institutional Processing's factual allegations relating to Cool School's action as undisputed to find lack of justification; and (3) Institutional Processing failed to identify any actual damages.

Institutional Processing counters that Cool School's denials are of no consequence, because Cool School does not deny that it prompted at least some of its members to accept the new terms and conditions, which required termination of their existing Institutional Processing contracts. This, Institutional Processing contends, is sufficient to establish that Cool School acted without justification.

"Whether any interference was 'improper' focuses on the means used and the presence of any legal justification to interfere."[29] The court considers seven factors in determining whether the interference was improper or without justification:

---

[28] D.I. 9 at 5-9.
[29] *Cousins v. Goodier*, 283 A.3d 1140, 1160 (Del. 2022).

(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between parties.[30]

The determination of "justification" is particularly factual.[31]

Cool School denied that it is not a competitor with Institutional Processing. Accepting this allegation as true, as the Court must, Cool School is a competitor with Institutional Processing and therefore, Cool School may interfere with the Institutional Processing contracts as long as the interference was not improper or unjustified.

Institutional Processing attempts to establish improper interference by pointing to Cool School's first webpage update. Institutional Processing alleges that members were required to terminate their Institutional Processing contract before being able to access earned points. Institutional Processing urges the Court to overlook Cool School's denial of the allegation that it lacked justification. To accept Institutional Processing's proposition, however, the Court would be required to construe the facts in its favor–that there was no way for a member to reach its points page without termination of the contract. The Court cannot do so on this motion.

---

[30] *WaveDivision Holdings, LLC*, 49 A.3d at 1174 (citing Restatement (Second) of Torts § 767).
[31] *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1154 (Del. 1981).

The pleadings also raise disputes of material fact. First, the CSC Email states that Cool School did not block members' access to their points.[32] Second, Institutional Processing failed to establish that members could not access their points through the "Get in Touch with Your Rep" button on the webpage.

Similarly, there is a dispute of fact about whether Cool School tried to hide the termination requirement in the "fine print." These disputes, alone, preclude entering judgment in Institutional Processing's favor.

Institutional Processing also has not established an injury as a matter of law. While the complaint alleges that six members terminated their contracts, there is no admission that they did, in fact, terminate their contracts.[33] There is no admission that contracts were terminated and a loss was suffered (both allegations were denied). Institutional Processing's allegations alone are insufficient to establish an injury or damages as a matter of law.

Accordingly, Institutional Processing failed to show that it is entitled to judgment as a matter of law.

---

[32] The CSC Email is referenced in the complaint and therefore, the Court may consider it in connection with the Motion for Judgment on the Pleadings.

[33] Cool School's answer states that it cannot admit or deny this allegation (*see* ¶ 57), which acts a denial. Super. Ct. Civ. R. 8(b).

### 2. *Tortious Interference with Prospective Business Relations*

To establish a claim for tortious interference with prospective business relations, a plaintiff must prove: "([1]) the reasonable probability of a business opportunity, ([2]) intentional interference by defendant with that opportunity, ([3]) proximate causation, and ([4]) damages . . .."[34] "[C]ompetitors in the same market [enjoy a privilege] to compete aggressively for market share."[35] Thus, these elements must be considered in light of the defendant's privilege to compete or protect its own legitimate business interests through lawful means.[36]

Institutional Processing contends that it has established each of the elements:

(1) It has approximately 1,800 contracts with school districts, many with years-long history and therefore, it has shown that there is a reasonable probability of continuing business relationships with its existing members.

(2) It established that Cool School intentionally interfered with those relationships by requiring immediate termination of the contracts, despite the 90-day notice provision, and further, the CSC Email "wrongly described" Institutional Processing's email as "entirely false."

---

[34] *Kable Prods. Servs., Inc. v. TNG GP*, 2017 WL 2558270, at *10 (Del. Super. June 13, 2017) (quoting *DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (Del. Ch. 1980), *aff'd*, 428 A.2d 1151).
[35] *Id.* (quoting *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1291, 1287 (Del. Super. 2001)).
[36] *Id.* (citing *DeBonaventura*, 419 A.2d at 947).

(3) Proximate cause is "clear" because Cool School required members to terminate the Institutional Processing contract.

(4) At least six members terminated their contracts due to Cool School's misconduct, resulting in damages.[37]

In response, Cool School makes the same arguments it made in response to the tortious interference claim. Namely, (1) its denial that its conduct interfered with any Institutional Processing relationship alone is sufficient to deny the motion; (2) the Court cannot accept Institutional Processing's factual allegations relating to Cool School's actions as undisputed to find that Cool School had no privilege to compete; and (3) Institutional Processing failed to identify any actual damages.

Institutional Processing's motion is premised on its allegation that it is not a competitor of Cool School. However, Cool School denied this allegation. As competitors, Cool School would enjoy a privilege to interfere with the Institutional Processing contracts. A factual dispute exists over whether the parties are competitors and Cool School's actions were privileged.

Even if these two companies are competitors, Institutional Processing contends that Cool School employed wrongful means by requiring members to terminate their contracts to access their points. Again, Cool School denied this allegation, creating a dispute of fact.

---

[37] D.I. 9 at 9-12.

Finally, for the same reason as the tortious interference with contract claim, Institutional Processing failed to show that it suffered damages.

Accordingly, Institutional Processing has not shown that it is entitled to judgment as a matter of law.

### 3.    *Defamation*

To prove a claim for defamation, a plaintiff must show: (1) a false or defamatory[38] communication regarding the plaintiff, (2) publication to third parties, (3) the third party's understanding of the communication's defamatory character, and (4) injury.[39]  "There is no 'liability without fault' in this area of the law, so the private plaintiff must show that the defendant acted at least negligently…."[40]

To satisfy the third element, the statement must be understood as defamatory by a reasonable third party.[41]  When evaluating this element, the court "must take the words in their plain and natural meaning and understand them as would a person of average intelligence and perception."[42]  Therefore, the pivotal question is not what a particular third-party actually thought, but what would the words elicit in a member of the general public?

---

[38] "A statement is defamatory when it 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Cousins*, 283 A.3d at 1148.

[39] *Spanish Tiles, Ltd. v. Hensey,* 2005 WL 3981740, at *6 (Del. Super. Mar. 30, 2005).

[40] *Cousins*, 283 A.3d at 1148.

[41] *Id.* at 1157-59.

[42] *Riley v. Moyed*, 529 A.2d 248, 253 (Del. 1987) (citing *Danias v. Fakis*, 261 A.2d 529, 531 (Del. Super. 1969)).

A party cannot be held liable for defamation if the challenged statement is "substantially true."[43] A statement is "'substantially true' if the statement [was] 'no more damaging to the plaintiff's reputation in the mind of the average reader than a truthful statement would have been.'"[44]

Institutional Processing argues that the first element is satisfied because the CSC Email falsely stated that the IPS Email was "entirely false," implying that Institutional Processing was a liar.[45] The email was sent to Cool School's members, so the statement was published to third parties, thus satisfying the second element. The third element is satisfied, it argues, because at least one member contacted it with concerns and confusion over the representations in the email.

Finally, Institutional Processing contends that it has established an injury because a customer was concerned and confused and it suffered reputational and pecuniary harm as six members terminated their contracts.[46]

Cool School counters that the alleged falsity of its email turns on whether Institutional Processing made false statements in the IPS Email. Specifically, the IPS Email implied that Cool School required its members to terminate their

---

[43] *Toptal, LLC v. Bloomberg L.P.*, 2025 WL 2172609, at *7 (Del. Super. July 31, 2025) (citing *Riley*, 529 A.2d at 253).
[44] *Id.* (citing *Images Hair Solutions Medical Center v. Fox News Network, LLC*, 2013 WL 6917138 at *3 (Del. Super. Dec. 20, 2013)).
[45] The email was concerning Institutional Processing because it named its vice president Shellie Batten. D.I. 9 at 13.
[46] *Id.* at 12-16.

19

Institutional Processing contract to access their Cool School points, a fact that Cool School disputes.

Cool School further contends that Institutional Processing's allegation of a single confused, unidentified third-party is insufficient to satisfy the third element.

Cool School again attacks Institutional Processing's alleged damages, arguing that it failed to establish that Cool School's conduct caused the terminations or that Institutional Processing suffered any damages because of such terminations.[47]

Institutional Processing failed to establish as a matter of law that the CSC Email was defamatory. First, the CSC Email did not state that the entirety of the IPS Email was false. Rather, it stated that Institutional Processing implying that members were required to terminate their Institutional Processing contracts to gain access to their Cool School points, was "entirely false." Second, as noted above, there is a factual dispute as to whether members were prevented from accessing their previously earned points. Indeed, if the CSC Email was substantially true, it cannot be defamatory.

---

[47] D.I. 21 at 7-10.

Institutional Processing also failed to show as a matter of law that a third-party would have understood the statement as defamatory.[48] Again, there is a factual dispute over the truth of the IPS Email and CSC Email.

Finally, Institutional Processing failed to establish an injury. A confused customer does not, at this stage, amount to reputational harm. Further, a dispute of fact exists over why the six members terminated their contracts.

Accordingly, Institutional Processing failed to show that it is entitled to judgment as a matter of law.[49]

### 4.    *Trade Libel*

To prove trade libel, a plaintiff must establish:

> (1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity.[50]

Institutional Processing contends that it has established each of these elements: (1) Cool School prompted and required members to cancel their contracts with Institutional Processing, so the IPS Email referring to this requirement was

---

[48] Institutional Processing also argues that Cool School failed to present any evidence that a third party would have any different understanding. At this stage, however, Cool School is not required to submit evidence. *Christiana Realty Associates, LLC v. Christiana Town Ctr., LLC*, 2024 WL 2753330, at *7, n.51 (Del. Ch. May 30, 2024) (at the judgment on the pleadings stage "parties need not plead evidence, and the pleading stage is not the time for [a party] to prove its claim").

[49] Institutional Processing does not address the fault element of its claim.

[50] *Incyte Corp. v. Flexus Biosciences, Inc.,* 2018 WL 6428155, at *14 (Del. Super. Aug. 23, 2018).

21

"objectively true," therefore the CSC Email claim that the IPS Email was "entirely false" is itself, false.

(2) The CSC Email attacked Institutional Processing's reputation by implying that it is untruthful in its business, which is "bound to cause pecuniary loss."

(3) It suffered a pecuniary loss as evidenced by a confused customer and the loss of six customer contracts.

(4) Cool School knew the CSC Email was false because it prompted members to accept new terms that required termination of their contracts with Institutional Processing.[51]

Cool School again argues that Institutional Processing failed to establish its claim because there are disputes of fact, including that it denied that it restricted members' access to points unless they canceled their Institutional Processing contract.

As with the defamation claim, there is a dispute of fact over whether members were required to terminate their Institutional Processing contract to gain access to their Cool School Points. Further, Institutional Processing failed to establish an injury for the same reasons stated above. Accordingly, Institutional Processing failed to show that it is entitled to judgment as a matter of law.

---

[51] D.I. 9 at 14-16.

## III. MOTION TO DISMISS

### A. *Factual Background*[52]

Cool School's counterclaim asserts the following additional facts.

Cool School provides a platform to enhance child nutrition programs through marketing and relevant foodservice support. It provides its members with access to two different manufacturer benefit programs: a loyalty points program called "Cool School Cafe" and a rebate program called "Cool School Prime."[53] Through Cool School Cafe, members earn points on qualifying purchases and redeem them through the Cool School website.[54] Cool School Prime allows members to receive cash rebates on their qualifying purchases and earn additional points.[55]

In late February 2025, Cool School updated its website to make it easier for members to sign up for Cool School Prime. When navigating to the website, a pop-up window appeared to opt into Cool School Prime.[56] When opting in to Prime, members completed an enrollment form, which posed a series of questions to determine eligibility. Because manufacturers do not allow school districts to be a member of more than one rebate program, Cool School members were required to identify any other rebate processing program to which they belonged and authorize

---

[52] For purposes of the 12(b)(6) motion, the facts are derived from the counterclaim. D.I. 4.
[53] *Id.* at ¶ 6.
[54] *Id.* at ¶ 7.
[55] *Id.* at ¶ 8. Cool School Prime is marketed by Cool School and administered by Dining Alliance, LLC, which is a rebate processor.
[56] *Id.* at ¶ 13.

a letter of termination.[57]   The bottom of the enrollment form contained a box labeled, "Need More Help?" (*see* figure 1), followed by a link: "Get In Touch with Your Rep."[58]

If a member contacted Cool School and indicated it did not wish to enroll in Cool School Prime, Cool School turned off the pop-up window, allowing the member to proceed to its points page.[59]

Almost immediately after Cool School updated its website, Institutional Processing sent a mass email to its members on March 19, 2025 (the IPS Email), many of whom are also Cool School members.  The email, with the subject line: "Institutional Processing Services Rebates and Access to Cool School Cafe Points," accused Cool School of requiring members to terminate their relationship with Institutional Processing to access their earned points and suggested that Cool School was engaged in invalid business practices.[60]   In response, members contacted Cool School with concerns and confusion.[61]

Additionally, Institutional Processing employees frequently represent to mutual members and prospects in the market that its program works in conjunction with Cool School's, incorrectly suggesting that they are not competitors.  Cool

---

[57] *Id.* at ¶ 9.
[58] *Id.* at ¶ 14.
[59] *Id.* at ¶ 15.
[60] *Id.* at ¶ 16.
[61] *Id.* at ¶ 19.

School and Institutional Processing are in fact competitors in the K-12 rebate market.[62]

On March 19, Institutional Processing also sent a cease-and-desist letter.[63] After receiving the letter, Cool School updated its website again to make it easier for members to close out of the Cool School Prime enrollment form (*see* figure 2) if they did not wish to enroll in the program.[64]

Cool School's counterclaim asserts claims for defamation and trade libel based on the IPS Email, which falsely accused Cool School of blocking members' access to earned points. It also asserts a claim for violation of the DTPA based on Institutional Processing's misleading and false statements in the IPS Email and in communications with third parties that Cool School engaged in invalid business practices and leading members to believe that the companies work in conjunction, when they are in fact competitors.

**B.    *Standard of Review***

On a motion to dismiss under Superior Court Civil Rule 12(b)(6),[65] all well-pleaded allegations in the counterclaim must be accepted as true.[66] Even vague allegations are considered well-pleaded if they give the opposing party notice of a

---

[62] *Id.* at ¶ 20.
[63] *Id.* at ¶ 17.
[64] *Id.* at ¶ 21.
[65] Del. Super. Ct. Civ. R. 12(b)(6).
[66] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

claim.[67] The plaintiff is entitled to all reasonable inferences that logically flow from the facts asserted in the counterclaim.[68] The court, however, is not required to accept every strained interpretation of the allegations.[69] Dismissal will be denied if there is a reasonably conceivable set of circumstances of recovery on the claim.[70]

## C. *Analysis*

### 1. *Defamation*

Institutional Processing challenges Cool School's defamation claim on two grounds. First, it asserts that the IPS Email is substantially true and therefore, it cannot be defamatory. Institutional Processing contends that Cool School admits that its members were prompted to accept these new terms and these new terms required members to immediately terminate their relationships with their existing rebate processor. Further, members reported to Institutional Processing that they could not access their points unless they terminated their contract and therefore, it was truthfully reporting information it learned from its members.

Second, the statements in the IPS Email are opinions, which are nonactionable. It argues that the email merely relayed concerns reported by its members and expressed a subjective belief—evident by use of the word "should"—

---

[67] *Sees v. Mackenzie*, 2023 WL 5202675, at *2 (Del. Super. Aug. 14, 2023) (citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006)).
[68] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).
[69] *Id.*
[70] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 536-37, n.13 (Del. 2011).

that members ought not be required to terminate their participation in Institutional Processing's program to access Cool School loyalty points.

Cool School responds that substantial truth is an affirmative defense, which is not a basis to dismiss the counterclaim. Further, where there are factual disputes regarding how a reasonable listener would consider the statement, as here, dismissal is inappropriate.

Institutional Processing does not challenge the sufficiency of Cool School's pleading, but rather, seeks dismissal on its defenses. The first ground—substantial truth—is an affirmative defense. This defense "may necessarily entail some inferential judgment concerning the importance of a falsity to the average reader. The notion of *substantial* truth necessarily implies a thread of untruth."[71] The court must, on a motion to dismiss, construe the inferences from the statement in favor of the non-moving party.[72] Because of the deference afforded the pleaded allegations, "it is a rare case that may be dismissed under Rule 12(b)(6) on the rationale that the statements complained of are substantially true."[73]

---

[71] *Ramunno v. Cawley*, 705 A.2d 1029, 1036 (Del. 1998) (emphasis in original).
[72] *Id.*; *Stephen G. Perlman, Rearden LLC v. Vox Media, Inc.,* 2015 WL 5724838, at *15-16 (Del. Ch. Sept. 30, 2025) ("On a motion to dismiss, … [the d]efendant retains the burden of proving that [the p]laintiff[] cannot recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint. Thus, … unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate.").
[73] *Ramunno*, 705 A.2d at 1036.

Institutional Processing does not address what portion of its statement is untrue. It seems to be arguing that its statements in the IPS Email were entirely true. But, Cool School alleged that the IPS Email falsely claimed that Cool School members were prevented from accessing their earned points unless they terminated their Institutional Processing contract. The Court must accept this as true for purposes of the motion to dismiss. As such, Cool School has stated a set of facts under which it is reasonably conceivable that Cool School would recover on its claim and dismissal on the affirmative defense is not proper.

Turning to Institutional Processing's second argument, a statement on a matter of public concern is not actionable in defamation "'if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.'"[74] A statement is actionable, even if presented as an "opinion" when it "may be reasonably construed as stating or implying defamatory facts about an individual that are provably false."[75]

Speech that is of public concern "is at the heart of the First Amendment's protection."[76] "[S]peech deals with matters of public concern when it can be fairly

---

[74] *Cousins*, 283 A.3d at 1155 (quoting *Hayes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir. 1993)); *see also Milkovich v. Loraine Journal Co.,* 497 U.S. 1, 19 (1990).
[75] *Cousins*, 283 A.3d at 1155 (citing *Milkovich*, 497 U.S. at 19).
[76] *Id.* at 1150 (quoting *Snyder v. Phelps*, 562 U.S. 443, 451 (2011)).

considered as relating to any matter of political, social, or other concern to the community. This classification is determined by the content, form, and context of a given statement, as revealed by the whole record."[77]

Institutional Processing made no effort to show that its statement was a matter of public concern. As such, the defense of "opinion" has not been shown to apply.

Assuming without deciding that its statement was a matter of public concern, Institutional Processing has not shown that its statement is a protected opinion. Construing the allegations in Cool School's favor, the IPS Email conveyed a verifiable fact—namely, that Cool School was prohibiting members from accessing their earned Cool School Points unless they terminated their Institutional Processing contract. Institutional Processing argues that the use of "should" is a clear expression of its opinion, thus protecting its statement. Couching a statement in the form of an opinion, however, will not preclude liability "where an imbedded fact may be inferred."[78] Thus, Institutional Processing's use of "should" does not shield it from liability because its statement inferred a verifiable factual statement.

Accordingly, the motion to dismiss Cool School's defamation claim is DENIED.

---

[77] *Id.* (quoting *Snyder*, 562 U.S. at 451).
[78] *Ramunno*, 705 A.2d at 1036.

## 2. *Trade Libel*

Institutional Processing challenges the trade libel claim on the ground that Cool School failed to allege a false statement. Further, it contends, Cool School failed to sufficiently allege that Institutional Processing intended to cause pecuniary loss or that it knew its statement was false. Specifically, it argues that the IPS Email "was simply a response" to its members' inquiries and Cool School has not alleged any specific facts as to Institutional Processing's intent.[79]

Cool School makes arguments similar to its response to the defamation claim; that Institutional Processing cannot show substantial truth and the counterclaim must be construed in Cool School's favor.

As with the defamation claim, drawing all reasonable inferences in its favor, Cool School has alleged a reasonably conceivable set of circumstances under which it could recover based on the false statement that members could not access their loyalty points without first terminating their Institutional Processing contract.

Institutional Processing's intent and knowledge are known only to it. Thus, Cool School cannot plead specific facts as to Institutional Processing's knowledge or intent, nor is it required to do so. The claim is subject to the notice pleading standard.[80] Cool School alleges that Institutional Processing either knew or should

---

[79] D.I. 11 at 4-8.

[80] Even when particularized pleading is required, a plaintiff may plead intent and knowledge generally. *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199,

have known that its statement was false and made with the intent to damage Cool School's reputation and business relationships. It is reasonable to infer that Institutional Processing sent the IPS Email, which contained a false statement about Cool School's business, with the intent to cause harm to Cool School. It is also reasonable to infer that Institutional Processing knew or should have known its statement was false because Institutional Processing did not attempt to verify the truth of what its members allegedly reported to it. Accepting Institutional Processing's proposition—that it could not have acted with the requisite intent or knowledge because it truthfully conveyed what its members reported to it—would require the Court to accept its allegations over Cool School's, which it cannot do on a motion to dismiss.

Cool School has stated a reasonably conceivable claim for trade libel. Accordingly, the motion to dismiss this claim is DENIED.

### 3. *Delaware Deceptive Trade Practices Act*

The DTPA prohibits the dissemination of false or misleading statements that "disparage[] the goods, services, or business of another."[81] "The DTPA was designed to prevent patterns of deceptive conduct, not isolated incidents."[82] Thus,

---

1208 (Del. 1993) ("Intent and state of mind . . . may be averred generally because 'any attempt to require specificity in pleading a condition of mind would be unworkable and undesirable.'").

[81] 6 *Del. C.* § 2532(a)(8).

[82] *Grand Ventures, Inc. v. Whaley*, 622 A.2d 655, 661 (Del. Super. 1992), *aff'd,* 632 A.2d 63.

a claim under the DTPA must be based on the threat of future harm, not just a past incident.[83]

Institutional Processing argues that Cool School's claim is based solely on a single email—the IPS Email—and therefore, it fails to allege a pattern of deceptive conduct. It further contends that because the email was not misleading, Cool School failed to adequately plead this claim. [84]

Cool School contends that it alleges more than a single instance of misconduct. It alleges that in addition to the IPS Email, Institutional Processing continues to misrepresent to shared and prospective customers that the parties' rebate programs are compatible, despite their direct competition in the K–12 rebate market. It argues that this constitutes a pattern of deceptive conduct designed to mislead customers and gain an unfair competitive advantage, thus creating a reasonable apprehension of future harm.[85]

As discussed above, Cool School has adequately pled that the IPS Email contained a false statement of fact. Contrary to Institutional Processing's argument, Cool School does not rely solely on the IPS Email for this claim. Cool School alleged that Institutional Processing continues to represent to existing and potential

---

[83] *Coretel Am., Inc. v. Oak Point Partners, LLC*, 2022 WL 2903104, at *9 (Del. Super. July 21, 2022) (dismissing DTPA claim that was based on a past isolated incident).
[84] D.I. 11 at 8-9.
[85] D.I. 22 at 9-10.

members that the two programs work in conjunction, which is not accurate. These allegations, accepted as true, are sufficient to state a reasonably conceivable claim under the DTPA. Accordingly, the motion to dismiss this claim is DENIED.

## IV. CONCLUSION

As the movant, Institutional Processing must prove that it is entitled to judgment as a matter of law before it may be awarded judgment on the pleadings. The parties' pleadings, including Cool School's denials, raise disputes of fact which precludes judgment in Institutional Processing's favor. Thus, its Motion for Judgment on the Pleadings is *DENIED*.

Construing the allegations in favor of its, as the Court must, Cool School has adequately pleaded the elements necessary to support its counterclaims. Thus, Institutional Processing's Motion to Dismiss is *DENIED*.

**IT IS SO ORDERED.**

*/s/Kathleen M. Miller*
Kathleen M. Miller, Judge